TALBOT
*vs*
DENT.

---

REPLEVIN.
PROHIBITION

*Case* 123.

September 25.

Case stated and decision of the Circuit Court.

Talbot *vs* Dent,
Same *vs* Same.

APPEAL FROM THE JEFFERSON CIRCUIT.

*Writs of Prohibition. Taxation. Legislative Power.*

CHIEF JUSTICE MARSHALL delivered the opinion of the Court.

IN September, 1848, Talbot filed his petition in the Jefferson Circuit Court, praying for a writ of prohibition, forbidding Dent, a collector for the City of Louisville, to proceed further in coercing the tax assessed upon Talbot's property in said City, for payment of the subscription of the City, in the stock of the Louisville and Frankfort Railroad Company. Talbot had refused

payment, on the ground that the statutes of the Legislature of Kentucky authorizing the subscription and taxation were unconstitutional, and the acts and ordinances of the City in pursuance thereof, void; and the collector having seized two slaves belonging to him as a means of coercing the tax, he prayed for a prohibition on the same ground. The petition and the response, which was immediately filed, refer to and exhibit the acts, ordinances, &c. necessary for presenting the question as to the statutes referred to; and while the Court had the petition under advisement, Talbot having filed the requisite affidavit, sued out his writ of replevin from the same Court, for the recovery of one of the slaves, which had been seized as above stated, and on executing the usual bond, the slave was delivered to him by the sheriff. Dent thereupon filed his affidavit, setting forth the foregoing facts, and that prohibition, and not replevin, was the appointed legal mode of questioning the constitutional validity of the tax, and obtained a rule upon Talbot to show cause why the writ of replevin should not be quashed, and the slave restored, and Talbot be fined for a contempt. From this affidavit, and Talbot's response to the rule, it is obvious that his action of replevin was based upon the same ground as his petition for a prohibition, and was intended merely to question the validity of the Legislative acts, under which the tax was demanded. On the hearing of this last rule, the Court discharged Talbot from the contempt, but quashed the writ of replevin, and ordered a return of the slave to Dent; and afterwards overruled the prayer or motion for a prohibition on the other rule.

The two cases having been brought to this Court by Talbot, and heard together, we have given a connected history of both, and shall dispose of each in this opinion.

The writ of prohibition, as used under the common law, seems properly to have been addressed to some Court, forbidding its further proceeding, in a case not within its jurisdiction, and would, therefore, have been an inappropriate remedy for the grievance alleged by Talbot, who might certainly have resorted to the action

The common law remedy by writ of prohibition, is given to arrest a proceeding in an inferior Court in a case not within its jurisdiction, and is not an appropri-

TALBOT
vs
DENT.

ate remedy to
test the legality
of a law levying
a tax, by prevent-
ing the officer
from proceeding
to collect the
tax—but the writ
is given for such
purpose by stat-
ute in Louisville
and replevin for-
bidden.

of replevin therefor, if it had not been for the provis-
ion made by the 24th section of an act of 1836, "to es-
tablish a Police Court in the City of Louisville, and to
amend the charter of said City:" (Session Acts, 287.)
That section enacts that "no bill in chancery shall be
filed, nor writ of replevin sued out by any person whose
property has been seized by the collector of Louisville
for the City taxes assessed against him, except it be on
the direct allegation of payment of such taxes before
distress made, or upon the allegation that no tax has
been assessed against him; *Provided* that, should any
person desire to try the validity of any such tax, it shall
be lawful to apply to the Jefferson Circuit Court for a
writ of prohibition, as other writs of prohibition are ob-
tained, and try the validity of the tax in that mode of
proceeding."

The obvious purpose of this enactment was, to pro-
tect the City from vexatious and inconvenient obstruc-
tion in the collection of her revenue, upon the mere
suggestion that the tax demanded was unconstitutional.
It, therefore, prohibited those remedies by which, on
that ground, the collection might be obstructed, with-
out the opinion of a competent tribunal, implying at
least a doubt as to the validity of the tax, and prescribed,
as the only mode of preventing the collection, a reme-
dy substantially founded on such opinion.

It is argued that this is not a City tax within the pur-

A tax imposed by
the corporation
of the city of
Louisville, to
raise a fund for
a Railroad to
Frankfort, is a
city law within
the meaning of
the city charter,
and replevin can-
not there be
maintained for
property distrain-
ed for its pay-
ment.

view of the statute which has been quoted. The grounds
of discrimination are, that it was levied for a particular
purpose, and not as a part of the general revenue of the
City; that it was to be ;collected by a special collector,
and not by the collector of the general revenue; that
when collected, it was to be paid, not to the City Treas-
urer, but to the Railroad Company, and that each tax
payer was to be entitled to the stock for which he had
paid. But it was levied by the City authorities, and in
her name, upon the property subject to taxation within
her limits, to be collected by the collector, or one of the
collectors of the City, and to be paid over, when col-
lected, in discharge of the subscription of stock made
by the City, and constituting a debt on her part which,

in this branch of the case, must be assumed to have been contracted without a violation of the constitutional rights of the citizens, and for purposes beneficial to them, and within the general object or end of their incorporation.

These circumstances make it a City tax; and it surely does not lose that character by the provisions made for its speedy collection and immediate application to its proper object, nor by the circumstance that, in addition to the common benefit to accrue to the City and its citizens, from the accomplishment of the object for which the subscription was made and the City debt contracted, each tax payer is to be entitled, upon payment of his tax, to a proportional share of the stock subscribed by the City, by which he, perhaps, may be, in the end at least, partially remunerated for the payment of his tax. Nor can it be admitted that the City loses the benefit intended to be conferred by the 24th section of the act of 1836, by appointing more than one collector, or by entrusting to special collectors, the collection of this special tax.

Since then this action of replevin is founded upon no suggestion that the tax had been paid by the plaintiff, or that it had not been assessed against him, but was intended merely to question its legality, it comes clearly within the prohibition of the statute. And as the object of that prohibition would be defeated by its progress, with the usual effect to its termination in the ordinary mode, and as, moreover, the plaintiff had instituted in the same Court the appropriate, and, perhaps, in the actual condition of things, the exclusive proceeding for obtaining redress, we are of opinion that he has no right to complain of the summary disposition made of his action of replevin. The case is peculiar; and as there was, in our opinion, no abuse of sound discretion in the order and judgment of the Court quashing the writ, and for a restoration of the slaves, the said order and judgment are, therefore, affirmed.

Vol. IX 67

TALBOT
vs
DENT.

The provisions of the amended statute authorizing the tax for Railroad stock and making it stock in the road, was not a violation of the rights of the tax payers but to their advantage.

If the taxing power exist and a tax be rightfully levied, it is not rendered invalid by a provision by law for its repayment or partial repayment to the tax payer or because the benefit might not be equal in its operation.

TALBOT
vs
DENT.

The case, upon the application for the writ of prohibition, presents the broad question whether the Legislature could constitutionally authorize the Mayor and Council of the City of Louisville, with the consent or approbation of a majority of the qualified voters of said City, expressed by vote at a regular election of City officers, and upon a direct submission of the question, after due notice, to subscribe for stock, not exceeding a prescribed amount, in the Louisville and Frankfort Railroad Company, for the construction of a Railroad connecting those two places; such stock to be paid for by tax upon property subject to City taxation. This authority is expressly conferred by the 55th section of the act to incorporate the Licking and Lexington Railroad Company, and the Louisville and Frankfort Railroad Company, the latter charter commencing at section 25, Session acts of 1847, page 47.

The power of the Legislature to delegate to local corporations the power of taxation for local purposes, is well established by legislation and judicial sanction.

The 6th section of an act of 1848, to amend the charter of the Louisville and Frankfort Railroad Company, (Session acts, 54,) reciting that the City of Louisville had, under the previous act, subscribed stock to the amount of $500,000, and that the Company, and the citizens of Louisville had petitioned, and at a public meeting of the citizens, had passed resolutions in favor of raising the subscription of $500,000, by a tax on the real and personal property of the City, collectable in four years, proceeds to authorize the Mayor and Council of said City to assess the real and personal property within the City, annually, for four years, and to levy and collect a tax of one per cent. on such valuation for each of the four years, as taxes of the City are now collected, and apply it, as collected, to the payment of the said $500,000, &c.; and further enacts that each and every person paying any part of said tax, shall be entitled to his *pro rata* share of said stock, and to have a certificate therefor, as soon as he shall have paid for a full or a half or a quarter share, or shall produce transfers from those who have paid portions, so as to entitle him to a full, a half, or a quarter share. The shares were $50 each, and the proportion to be called in any one year, was limited by the original charter to one

half. The same charter had expressly authorized the City of Louisville to raise the amount which it might subscribe, as it might be called for by the Company, by tax on the real and personal estate, or either, within the City, or by borrowing it, in which latter case, they were authorized to provide for the payment of the principal and interest by taxation, as in the other case.

A comparison of these provisions, shows that the amended charter is more favorable to the citizens of Louisville, as tax payers, than the original charter under which the subscription was made, since it not only extends the time of payment, and thus diminishes the rate of annual tax below what it might have been under the original charter, but also secures to the citizen, the portion of stock for which he pays in paying his tax. The amendment is also apparently more just, and would be deemed more favorable to all, in denying the Mayor and Council the option conceded in the original act, of levying the tax upon either the real or personal estate within the City. It may be presumed, however, that even under the original charter, the tax would have been assessed on both classes of property as was therein authorized. And there is nothing in this case to show that the alteration in this respect operated unjustly or injuriously upon the present plaintiff; nor do we understand that this charge is made a ground of objection or complaint in the present case.

Some objection, however, seems to be made to that feature of the amendment which entitles the payer of the tax to a rateable portion of the stock for which the City had subscribed. But if the authority originally given to the Mayor and Council to subscribe for stock not exceeding a prescribed amount, and to pay the amount subscribed by increased taxation on the property within the City be valid, then the subscription made under that authority, and within the prescribed limits, was obligatory upon the City and the citizens, and carried with it the right of taxing the property within the City for payment of the subscription, with the effect of securing to the City, in its corporate capacity, the ownership and profits of the stock subscribed in her name.

And we do not perceive the force of the argument by which it can be contended, that the authority to levy and collect the tax is invalidated, and the obligation to pay it destroyed, because, with the assent of the City, the citizens who shall actually pay the tax by which her debt for the stock is to be discharged, and to receive from her the stock itself, for which they shall have paid.

If the stock were worthless with respect to any profits to be derived from it, still, as when paid for, it imposed no additional burthen upon the holder; and as the tax payer might relinquish it to the City, or transfer it to another, his right to receive it could make no essential change in his condition, or in the nature or burthen of the contribution, by which he might become entitled to it. If, on the other hand, the stock were valuable, the surrender of it to the tax payer, whereby his payment was to be facilitated, or to a greater or less extent reimbursed, would certainly be no grievance to him. And although it is somewhat of an anomaly, for the governing power to levy a tax for a particular purpose, and at the same time to furnish the means of payment to the tax payer, or to reimburse him by a transfer of the very thing which is paid for by the tax; still, if the government were under a valid obligation to pay, and had the right to meet this obligation by a tax upon its citizens, a contribution, rateably assessed and levied for this public object, upon all the property of the citizens, would not lose its character of a tax, nor be less obligatory upon individuals, because the payment of it would entitle them, respectively, to corresponding portions of the thing for which the government had contracted the debt or obligation, for the discharge of which the contribution was required. The validity of the tax, and the obligation of the citizen to pay it, depend upon the right of the government to contract the debt or duty, and to discharge it by taxation, and cannot be affected by the disposition which is made of that for which the debt was contracted. And conceding that a subscription of stock by the City authorities in a corporation, whose objects were otherwise wholly unconnected

with the interests of the City, with the view of paying for the stock by future increased taxation on the citizens, and dividing it out among them, in proportion to their respective payments of the tax, would, as an assumption of agency for individuals, in a matter of mere individual interest, be highly objectionable, and, perhaps, incapable of being made valid, even by Legislative sanction; it cannot be admitted, that the transaction before us is brought within this description by the fact that the City, in levying the tax for the discharge of her obligation, incurred by subscribing for the stock, proposes to surrender the stock itself to the payers of the tax. Even if this condition of surrendering the stock had been included in the original charter of the Railroad Company, authorizing the City to subscribe and pay for the stock by taxation, and had been one of the terms on which the subscription was consented to by the voters of the City, and made by the Mayor and Council, it could not have been thence inferred, that the true nature and effect of the proceeding, was merely to make the tax payers of the City, stockholders in a new and foreign corporation. In the first place, it could not be presumed that the Legislature would have sanctioned, or that a majority of the voters would have assented to, or that the City authorities would have attempted or desired, the imposition of such a burthen upon the citizens, against the consent of any, for the mere purpose of affecting their private interests and condition, without any motive, or prospect of advantage to the city at large; but the contrary of all this may be safely assumed. And, in the next place, the Railroad Company was not incorporated merely for the purpose of making profit to the stockholders, but for the accomplishment of an object apparently of peculiar interest to the City of Louisville; and it may be taken as certain, that her subscription was made with the view, mainly, of securing the accomplishment of that object. And her proposing to surrender the stock to the tax payers, is not only consistent with this conclusion, but tends to confirm it, as it was divesting herself of some advantage, obviously for the purpose of inducing a

prompt discharge of the very heavy burthen of taxation
to be imposed upon the citizens, whereby the execution
of the work would be expedited.

Then, without going into the details of the assess-
ment and levy of the tax, or of the provisions for trans-
ferring shares, and fractional shares, of stock to the tax
payers, we see nothing substantially objectionable or
unequal in them. Whether a small tax payer should
be entitled to a certificate of stock, to the value of his
payment, though it should be but the hundredth part of
a share, or must buy or sell his interest, if it be less than
a quarter share, cannot affect the constitutional validity
of the subscription by the City, or of the tax levied for
its payment. If the stock is valuable, the presumption
is, that each tax payer receives, either in stock or a re-
ceipt for his tax, which is, or will be, vendible, a value
proportioned to the amount which he has paid. If the
necessities of some may compel them to sell at a sacri-
fice, before the stock has acquired a fixed value, the same
would occur, if all received certificates of stock for
their payments, however small. And the same might
occur with regard to any other species of property
which the tax payer might possess. Nor can it be as-
sumed, that this loss will fall more certainly upon the
small, than upon the large tax payer, or that the former
alone will be the victim of undue speculation. It is im-
possible to guard against all inequalities in the burthen
of taxation, and especially against such as arise from in-
equality of condition and ability among the tax payers.
And, at any rate, it would seem that any question grow-
ing out of the peculiar operation of the system now be-
fore us, upon the poor or the small tax payers, would not
be properly available to one whose tax for one year is
near three hundred dollars.

We pass, then, to the fundamental question, whether
the Legislature could constitutionally authorize the pub-
lic authorities of Louisville, with the consent of a ma-
jority of the voters of the City, to subscribe for stock
in the Louisville and Frankfort Railroad Company, and
to pay for it by increased taxation upon the citizens.
And as the right of the Legislature to delegate the pow-

er of taxation for local purposes, to the regularly con-
stituted local authorities, is too well established, both by
Legislative precedents, and by judicial decisions, to be
now denied, and is, in fact, conceded on all sides in the
present case, the question stated resolves itself into the
enquiry, first: Whether, in the present instance, the
power is delegated and exercised for a purpose properly
local, or within the legitimate objects of the local cor-
poration? and, second: Whether, if it be so, any inva-
sion of the constitutional rights of individuals is involved,
either in the circumstances under which the power was
delegated, or in those which have attended its exer-
cise?

Upon the first question, we do not deem it necessary
to make any labored argument or discussion. Substan-
tially the same question has been discussed and decided
by the Supreme Courts in the States of Virginia, Con-
necticut and Tennessee; and each of these Courts has
affirmed the power of the Legislature, in their respec-
tive States, to authorize a subscription of stock involv-
ing the power of taxation for its payment, by the cor-
porate authorities of a City, under special Legislative
sanction, for the construction of a work of internal im-
provement, by which the facility of access and of trans-
portation to and from the City, is to be increased: *God-
din* vs *Crump, &c.* (8 *Leigh's Reports,* 120;) *the City of
Bridgeport* vs *the Housatonic Railroad Company,* (15
Connecticut Reports,* 475;) *and Nichol, &c.* vs *the Cor-
poration of Nashville, in the Supreme Court of Tennes-
see,* 1849, (*Pamphlet Report.*)

These cases decide what must, we think, be conceded,
that, in order to characterize a particular work or ex-
penditure, as being within the legitimate local purposes
of a local municipal corporation, it is not necessary that
the work or expenditure should be confined to the lo-
cal limits of the corporation; but that in the case of a
road or canal leading to or near the City, and obviously
tending to facilitate its commerce, and secure or in-
crease its commercial business and prosperity, as well as
in the case of an aqueduct or a sewer, tending to pro-
mote the health and comfort of the City, it is sufficient

TALBOT
*vs*
DENT.

The Legislature have constitutional authority to grant to town corporations power to tax the property of towns or cities, for the construction of works of internal improvement, for facility of access to and transportation to and from the town or city: (8 *Leigh's Rep.* 120; 15 *Connecticut Rep.* 475, &c.; *Ten. Sup. Court.*) A Railroad to a city is such work.

that the object to be accomplished be so connected with the City and its interests, as to conduce obviously, and in a special manner, to their prosperity and advancement.

That a Railroad having one of its termini on the Ohio river, within the limits of the City of Louisville, and extending indefinitely into the interior of the State, is a work of this character, we may well assume. To what extent it is important, or will be advantageous to that City, is not a judicial question. The practicability of the work, as proposed to be accomplished by the Company and by the subscription of the City, which is also a question more properly to be decided elsewhere, is not denied. And so far as the validity of the subscription, and of the tax, depend upon the importance of the road to the interests of Louisville, the question may properly be left to rest upon the concurrent opinions of the Legislature, implied in authorizing it, of the majority of the legal voters of the City, directly and formally expressed in favor of it, and of the Mayor and Council, by whom the subscription was made. It would be needless to state the considerations which tend to show the peculiar importance and advantage of such a work to the City to which it leads. We barely remark, in answer to objections made, that although other portions of the State, and especially those which are adjacent to the proposed road will, undoubtedly, derive advantage from its construction; even this advantage is expected to arise mainly from the increased facility of communication with Louisville, and illustrates the peculiar importance of the work to her. She is not interested in it merely as a part of the State at large. It is rather as a work redounding to her advancement, and to the interest of those whom it will connect with her, that the State at large is interested in it. It is not a work undertaken by the State, which has no stock in it, but a work undertaken by individual or corporate subscribers, and to which Louisville contributes, on account of its special relation to herself.

We cannot doubt, therefore, that the construction of this road is a legitimate object of expenditure and of

TALBOT
*vs*
DENT.

taxation, by the City of Louisville, that she might, even without a special act for the purpose, have contributed to it from her surplus revenue, as coming within the legitimate objects of her original corporation; and that under a special authority for the purpose, she might, as she has done, contribute to it by a subscription of stock, involving future increased taxation, provided no right of her citizens is infringed thereby.

The tax, as levied, being equal upon all, in proportion to the property of each within the City, we do not understand how the rights of any citizen can have been infringed by the delegation of the exercise of the power, unless it be assumed either, that each citizen has a right to decide authoritatively, whether the tax is levied for a legitimate purpose, and, therefore, whether it is valid or not, or that the rate of taxation as existing when he became a citizen, cannot be afterwards increased so as to affect his property, without his consent. The argument for the plaintiff does not, it is true, specifically urge either of these positions, but appeals to the judiciary, as being invested with the power, and bound by sacred duty, to protect the citizen from unjust and oppressive legislation, though not coming within any of the prohibitory clauses of the constitution. But though, while acknowledging no power or duty in the judiciary, above or beyond the constitution and the laws which accord with it, we feel bound so to construe both the constitution and the laws, as, if possible, to prevent any injustice or oppression to individuals, we perceive no basis for the charge of injustice or oppression in the present case, or for the claim of protection against the operation of the laws of the State and City, now brought in question, unless upon the ground that some right which, under the constitution should be deemed sacred, has been violated. There is no inequality producing injustice or hardship to the plaintiff, nor do we understand that there is any real complaint, except that his tax has been increased without his consent, to an amount greater than was previously authorized by law, and for a purpose which he either disapproves, or considers not to be within the legitimate objects of local taxation.

*The constitution and laws should, if possible, be so construed as not to work inequality and injustice to citizens.*

TALBOT
*vs*
DENT.

Taxation by a local corporation for a local purpose, and tending to promote the local prosperity, is within the scope of the corporate powers of city corporations, when sanctioned by the legislative authority, though not consented to by each individual to be affected thereby—the will of the majority is to govern when it is referred to the decision of those to be affected.

But if the obvious relation of the Railroad, for which this tax was levied, to the City of Louisville is not sufficient to bring it within the discretion of the Legislature and of the City government to determine whether it be a proper object for expenditure and taxation by the local authorities, no criterion has been furnished of such a character, as would authorize a judicial tribunal to reject the concurrent opinions which have been referred to, and pronounce the local tax illegitimate, and, therefore, unjust and oppressive. The question is one essentially of fact and of expediency. There is, in the nature of the thing, no injustice, and but little danger of oppression, in authorizing the local authorities, elected by the local community, to incur expense, and levy an equal local tax, for the accomplishment of an object of local interest, and which they may deem of sufficient importance to justify the additional burthen which they will impose upon themselves and their constituents. If it be an object of local interest, tending to promote the local prosperity, it comes within the objects of the local corporation; and the propriety of promoting it by local taxation, must be determined by the corporation, so far as the Legislature authorizes its action on the subject, and it is not dependent upon the opinion or consent of each individual. From the nature of the association, the will of the individual is merged in that of the majority, upon all subjects on which the body, as a corporation, has a right to act. And it can only be in a flagrant case of excess of power, if in any, that the judiciary could determine, on its own judgment, in opposition to that of the Legislature, and of the City authorities, and of the majority of the individual corporators, that the purpose for which a tax is levied under such authority, is not within the legitimate objects of the corporation, or not a purpose for which a local tax may be imposed. The safety of the individual, consists in the limit upon the power of taxation, as uniformly imposed by the Legislature upon the local government, and in the common interest and common judgment of the corporators, or their local representatives. We refer to the opinion of this Court in the case of

*Cheany* vs *Hooser*, (9 *B. Mon. ante*, 338,) upon the subject of local taxation, as having an important bearing on the objection which has been stated. With regard to the right of the individual to oppose otherwise than by his vote, the increase of taxes beyond the rate existing when he became a citizen, or acquired his property, nothing need be said. All experience is against it; and it is repudiated by the exigencies of every growing town in this and other countries. And as the right of taxation, or of increasing the taxes for any special purpose, so far as either is legitimate, does not depend upon the individual will of each citizen who is to be subjected to it, and even a majority cannot impose a tax upon the minority, except as authorized by the constitution and laws, we have referred to the vote of the majority in this case, not as giving authority to the Legislature, but as demonstrating, with the other facts, the existence of a peculiar local interest in the object to be affected by the tax. Of what class of citizens that majority was composed, the record does not inform us; nor is it material to the question of power. Those who expressed their opinion, were the legally qualified voters of the City, and by its constitution their will, within the sphere of the corporate authority, determines, sooner or later, the action of the corporate body. And the very fact that the money to be raised by the tax, was not to be expended within the city, and that the benefit to be derived from it was, therefore, to be felt in the effects of the contemplated work, upon the property and business of the City, tends to prove, that no motive disconnected with, or opposed to, the interests of the property holders and business men, operated to produce the expression of opinion in favor of the subscription. If there was a difference of opinion among them in this, as in other questions coming within the range of the corporate powers, the wishes and opinions of the minority must yield to those of the majority.

Wherefore, the order overruling the prayer for a prohibition, is affirmed.

*Pirtle & Speed and Loughborough* for appellant; *Guthrie* for appellee.