Pattison *v.* Board of Supervisors of Yuba County.

---

## PATTISON *v.* BOARD OF SUPERVISORS OF YUBA COUNTY, AND THE SAN FRANCISCO AND MARYS- VILLE RAILROAD COMPANY.

QUERE: Whether a tax-payer can interfere by injunction, to restrain the perform- ance of a ministerial duty cast upon public officers by law, merely upon the ground that the effect, at some future time, if certain other things be done, might be to subject his property to taxation?

To render a law unconstitutional, because opposed to the general policy of the Constitution, that policy must be manifested by the terms of the Constitution, fixing with precision the particular rule, and not as gathered by general infer- ence.

The 8th Article of the Constitution, prohibiting the State from creating debts over three hundred thousand dollars, or loaning its credit, etc. only applies to the State as a corporation—as a political sovereign, represented by her law-making power; and does not prevent the State authorizing counties or municipal corpo- rations, to create debts, when the debt of the State itself is up to the constitu- tional limit.

The State may have political subdivisions—that is, she may permit a portion of her powers of government to be exercised by local Agents. But, politically consid- ered, geographical or political departments are no more the State, or a part of the State, than a man's land or his agent is a part of himself.

There is no difference in this respect between a municipal corporation and a county. They are both political and geographical divisions of the State. They are both the subjects of its political dominion.

The Legislature has a right to authorize a local tax for the purpose of internal im- provements; it may authorize the local authorities to impose the tax; this au- thority may be given upon petition or without it, or by, or without, a submis- sion of the proposition to the people, and it is not essential that the improve- ment should be within, or confined to the locality taxed, and a subscription for stock, to be paid for by taxation, is a valid contract to pay it.

Under the Act of April 28th, 1857, authorizing the Supervisors of Yuba County to take stock in a railroad company, the stock may be taken in any railroad by which a railway connection shall be formed between Marysville and Benicia, or any point on the Sacramento River, at or near Knight's Ferry. The company in which the stock is taken need not be constituted for the express and only purpose of such connection, provided the effect of the work is to make the connection.

APPEAL from the Tenth District.

The case was tried upon an agreed statement, on demurrer and answer, submitting the two questions discussed in the opin- ion of the Court, the Court below dismissed the bill. Plaintiff appeals.

*Reardan & Smith,* for Appellant.    I. The Board of Supervisors had no authority to subscribe to the capital stock of the "San

Francisco and Marysville Railroad Company," even though the Act of the Legislature was constitutional. The Act under which the Board of Supervisors claim to derive their power to take this stock in the name of the county of Yuba, (Statutes of 1857, 296, Sec. 1,) makes it the duty of the Board to submit to the electors of Yuba County, at a general election, "The proposition for the Board of Supervisors of said county to take and subscribe two hundred thousand dollars to the capital stock of any railroad company, for the purpose of constructing any railroad, by which a railroad connection shall be formed between the city of Marysville and either the city of Benicia, or any point on the Sacramento River, at or near Knight's Ferry, or Sacramento City."

Now, the question is, has the Board of Supervisors subscribed the two hundred thousand dollars to the capital stock of any railroad company contemplated in the Act? We contend that this railroad company has quite a different object from that named in the Act.

The record shows that the San Francisco and Marysville Railroad Company is incorporated for the purpose of constructing a railroad from Marysville to Vallejo, and connecting by steamers with San Francisco. The company is not formed for the purpose of connecting Marysville either with Benicia, or any point on the Sacramento River.

In naming the city of Marysville, Benicia, Knight's Ferry, and Sacramento, the Legislature intended that Marysville, and either one of the other three points specified, should be the termini of the road.

The language of the act itself shows that the railroad company contemplated, was one that should be formed for the purpose of constructing a railroad from Marysville to one of the points designated. The stock is not to be subscribed for the purpose of constructing a railroad, but to a company organized for that purpose. We contend, therefore, that if the railroad extend beyond Knight's Ferry, it should terminate at Benicia.

The Supervisors, deriving their whole power from this statute, have undertaken to bind the county by subscribing the amount to the capital stock of a company whose road does not terminate at either of the three last named points, but at Vallejo, and not

running nearer than six miles to Benicia; and not only that, but to a company whose purpose is to run a line of steamers between San Francisco and Vallejo, a distance of about thirty miles. The electors having voted to take stock in a railroad company, now find that they have become interested in navigating the San Francisco and San Pablo bays. The special power to subscribe in a railroad does not include the power to engage in building and running steamers between the terminus of the road and a point thirty miles distant.

II. Can the Legislature authorize a county to subscribe to the capital stock of any railroad or other incorporated company?

We contend that such power is withheld by the true intent of the Constitution, if not by express words. (Constitution, Art. XI, Secs. 10, 5.) Municipal Corporations are creatures of statute. Counties date their existence before any statute of which we have a record. The common law, which has been made the common law of this State, recognizes the existence of counties or shires in the Constitution of those assemblages of Barons and Knights which first admitted Burgesses to a participation in their deliberations. The Constitution of this State recognizes its counties in all their common law rights and prerogatives; and, for convenience, the law extends to these counties certain privileges and prerogatives not necessary to their county organization. A county is "a circuit, or particular portion of a State or Kingdom separated from the rest for certain purposes in the administration of justice." (Webster's Dic.)

Counties are, by their very nature, confined to limits in their expenditure of money more restricted than those which control municipal corporations. The "roads, bridges, and ferries," over which County Supervisors may properly exercise jurisdiction, are those which lie within the county, and are necessary for the convenience and comfort of the inhabitants. Municipal corporations, on the other hand, are creatures of statute, but they are also children of trade. They may be permitted to embark in the construction of roads, the improvement of rivers, and the support of navigation companies, but for reasons growing out of this very law of their existence, are no way applicable to counties.

(*Clarke* v. *City of Rochester*, 24 Barb. 446; *Low* v. *City of Marysville*, 5 Cal. 214.) A county is a component part of the State—a component part cannot do that which the whole cannot do. The State cannot become a stockholder in the railroad. Therefore, a county cannot.

*J. A. McDougall* and *Timothy Dame*, for Respondents.

Appellant makes two points:

1. That the Act of the Legislature, under which the Board of Supervisors have acted in taking the stock in the railroad company, is unconstitutional.

2. That the Board of Supervisors had no authority to subscribe to the capital stock of " The San Francisco and Marysville Railroad Company," even though the Act of the Legislature was constitutional.

The first question was fully discussed at bar in the former hearing, and we do not deem it necessary to repeat in full our part of the argument. But let us consider a moment the objections urged.

They say that the power exercised by the Board of Supervisors under the Act in question, is " withheld by the spirit, meaning, and true intent of the Constitution," as expressed in Art. XI, Sec. 10.

It is certainly very clear, from the language of this section, that the State, in her capacity as a State, cannot loan her credit in aid of, or become a stockholder in, any railroad company, or other corporation; because she is restricted from doing so by the plain terms of her Constitution, and which is restrictive upon the powers of the Legislature; and that what is not clearly prohibited by the terms of this instrument, the Legislature can do. Then if the Constitution of the State does not in direct and positive terms prohibit the Legislature from granting the power to counties, cities, or other political corporations, from taking stock in a railroad company, or other public enterprise—there being no limitation or restriction imposed upon counties and cities, touching the matter—the power by implication is conceded to the Legislature to authorize the taking of such stock; for the very language of the section of the Constitution referred to,

shows that the subject of taking stock in such companies must have been before the convention that framed the Constitution.

The provisions of the Constitution, then, amount to this: they admit the power of the Legislature to authorize counties and cities to take stock in works of internal improvement, but forbid the State from doing so in her State capacity.

It is further urged that the Act in question, "conflicts with the true policy of the State," etc.

We might show the contrary. But it is well settled by this Court in several recent cases, and is the prevailing rule of law in other States, that questions of policy of this character belong exclusively to the legislative branch of the Government, and not to the Judiciary.

It is the business of the Court to decide what the law is, not what it should be. The mere *dicta* laid down by Mr. Chief Justice Murray, in the case of *Low* v. *The City of Marysville*, (5 Cal. 214,) is repugnant to the decisions of all the State Courts upon this subject, and also of this Court in several cases recently decided. (*The City of Aurora* v. *West*, 9 Ind. 74, recently decided; and, also, the cases of *Grant* v. *Courter*, 24 Barb. N. Y. 232; *Benson* v. *The Mayor, etc.* Id. 248; and *Clarke* v. *The City of Rochester*, Id. 446, and the authorities cited in these cases.)

The complaint, in assigning causes for the injunction, alleges that the company, "is not formed for the purpose of connecting by railroad the city of Marysville with the city of Benicia, or any point on the Sacramento River, at or near Knight's Ferry, or Sacramento City." We call the attention of the Court here to the discrepancy between the averment in the complaint and the provisions of the Act.

It is not required that the company should have been organized, chartered, or "formed for the purpose of connecting the city of Marysville with any one of the points named. The subscription may be made to the capital stock of any company, 'for the purpose of constructing any railroad by which a railroad connection shall be formed,' between the city of Marysville and either of the named points."

The agreed statement of facts shows that the line of said railroad commences at a point near the center of the corporate limits of the city of Marysville and continues from thence "through the

county of Sutter to a point on the Sacramento River at Knight's
Ferry, forming a railroad connection between the city of Marys-
ville and the Sacramento River at Knight's Ferry;" also, that the
company are engaged in the construction of the road.

The plan and purposes of the company fulfill all the conditions
required, and it is a strange position that because the same com-
pany proposes to do much more than is required, that, therefore,
the county of Yuba should not aid in the enterprise.   It is suffi-
cient, however, that no such limitation as to the character of the
company as is assumed in Appellant's argument is to be found
in the Act itself.   (Smith Stat. and Const. L. Sec. 545 ; 6 Dane's
Ab. 600 ; 7 Cranch, 52 ; *The City of Aurora* v. *West,* 9 Ind. 74.)

BALDWIN, J. delivered the opinion of the Court—TERRY, C. J.
concurring.

The bill in this case was filed in the Tenth District.   Its object
is to enjoin the Supervisors of Yuba County from subscribing the
sum of two hundred thousand dollars to the capital stock of the
San Francisco and Marysville Railroad Company, a corporation
formed under the general law concerning corporations.   By the
Act of the Legislature, approved April 28, 1857, (Statutes of
1857, 296,) it was provided, in substance, that this Board should
submit, at the next general election to be held for county officers
in Yuba County, to the qualified electors of the county, the pro-
position for this Board " to take and subscribe two hundred thou-
sand dollars to the capital stock of any railroad company, for
the purpose of constructing any railroad, by which a railroad
connection shall be formed between the city of Marysville and
either the city of Benicia or any point on the Sacramento River
at or near Knight's Ferry, or Sacramento City."

The second section of this Act provides the time, manner, and
other machinery, of the election.   The third section declares
that if the proposition be carried by the popular vote, the Board
of Supervisors, in the name of the county of Yuba, are empow-
ered to take and subscribe, for the use, benefit, and advantage,
of said county, to the capital stock of any railroad company, for
the purpose mentioned in section one of this Act, stock to the
amount of two hundred thousand dollars, and therefor to pledge
the faith of said county of Yuba for the payment of the same in

the manner thereinafter provided.    By section five a committee, constituted by section four, shall make the subscription, " conditioning the same to be paid in the bonds of Yuba County;" and by section six it is provided when, and in what manner, these bonds are to be issued.

The San Francisco and Marysville Railroad Company was incorporated on the 28th day of October, 1857, for the purposes set forth in their articles of association—that of constructing, owning, and maintaining, a railroad from the city of Marysville, in the county of Yuba, through said county and the counties of Sutter, Yolo, and Solano, to a point on San Pablo Bay, near Vallejo.

The vote on this proposition was in favor of the subscription.

This is a case of much public importance, and we are requested by the learned counsel on both sides to decide the main questions involved, without reference to technical points.    The questions were before us at the last term, but we declined to pass upon them for the reason that the proper parties upon whom our judgment should be binding were not before the Court.    We thought it a bad precedent to consider grave questions involving important interests, in the absence of parties really interested, since, though in the particular case there was no suspicion of such a design, such a precedent might allow any suitor to bring up mere speculative questions, and bring before the Courts titles or claims of third persons with which he had no concern, and which might be decided in the absence of, and without a hearing by, those who might be affected by the adjudication.

We do not see very clearly that the present plaintiff can interfere by injunction, and restrain the performance of a ministerial duty cast upon public officers by the law, merely upon the ground that the effect of this might be, at some future time, if certain other things were done, to subject his property to taxation.    But as the proper parties are before the Court, we waive this inquiry, merely alluding to it to show that it is still an open question, not passed upon or foreclosed by this decision.

Two points are made by the Appellant.

1. That the Board of Supervisors had no authority to subscribe to the capital stock of the San Francisco and Marysville Railroad Company, even though the Act of the Legislature were constitutional.

2. That the Act is unconstitutional.

The last proposition was the one mainly argued at the bar. We shall consider it first.

It is not pretended by the counsel that there is any provision of the Constitution which specially interdicts the taking of stock in railroads by a county; nor that there is any provision which forbids this mode adopted by the Act of 1857, of ascertaining or giving effect to its will if it so desire. But it is argued that "such a power is withheld by the spirit, meaning, and true intent, of the Constitution." The generality of such a proposition creates an instinctive suspicion of its soundness. We do not deny that there may be a declared policy in a Constitution, as in a penal law, or system of laws, and that it is not within the power of the Legislature to contravene this policy, although the Act do not oppose the express language of any clause of the instrument. But this policy must be manifested by the terms of the Constitution, fixing with precision the particular rule, and not be gathered by general inference, or vague and uncertain speculation of what the framers of the Constitution designed, but failed clearly to express. Mr. Justice Daniel, of the Supreme Court of the United States, took occasion in a recent case, to disapprove of this course of reasoning, and relaxing something of the austere dignity of that august tribunal, remarked, that if the Judges were to adopt the notion that a law might be declared unconstitutional, because of its supposed repugnancy to the spirit of the Constitution, they ought to employ a rapping medium to procure authentic revelations from that spirit. We expressed our views of this mode of constitutional construction in the case of *The People ex rel. Brodie* v. *Weller,* and do not deem it necessary to repeat here what we there said.

The argument, more fully developed by the learned counsel, seems to be this: The State is forbidden by the 8th Article of the Constitution, to create debts over three hundred thousand dollars, or to loan its credit, etc; the counties are component parts of the State; the State cannot authorize the creation of this debt by its separate subdivisions any more than by itself as a whole. If this argument were sound, it would seem to follow that all indebtedness of every sort, incurred by all the counties of the State—the State having exceeded its privileged limit—is

Pattison *v.* Board of Supervisors of Yuba County.

void. But the radical error of the argument is, this provision only applies to the State as a corporation—as a political sovereign, represented by her law-making power. As such corporation, or sovereign being, she has no subdivisions, for sovereignty is not divisible. She may have political subdivisions—that is, she may permit a portion of her powers of government to be exercised by local agents, who, of course, are her subordinates. But politically considered, geographical or political departments are no more the State, or a part of the State, than a man's land, or his agent, is a part of himself. The intent of this clause of the Constitution is plain enough; it was designed as a check on legislation, and such legislation as might create a charge upon the property of the entire State. But it is not only unwarranted by the words of the Constitution to suppose that counties were included in this inhibition, but it might well have been foreseen that the provision would prove extremely embarassing, if it did not entirely stop the operations of those local governments. All of them, or nearly all, we believe, have been obliged to go in debt to support themselves; and, besides, the restriction would be wholly impracticable, for how ascertain from time to time, whether the aggregate of all this indebtedness passed the limit, and when, or whether, by payments or otherwise, returned within it again? For the question of the validity of any contract or debt would depend upon the general balance of State and county debits or credits. Many cases have come before this Court involving the validity of these debts, but the point has never before been taken; and we think there is not enough of plausibility in it to justify a more detailed exposition of its fallacy.

The same argument, which denies force to this proposition, that this is a State debt, within the meaning of the Constitution, equally refutes the idea that it is a loan of State credit.

The general powers of Government being vested in the Legislature, the power to pass this law must be conceded, unless some constitutional restriction is imposed. We see no restriction in this case. The fact that the State could not take stock in this road does not show that the Legislature could not authorize the county of Yuba to take stock; for the reason that the Constitution says the State shall not subscribe, and does not say that

the county of Yuba shall not. The restriction goes no further than the language carries it. It comprehends the particular act and party interdicted—none other.

There is no difference in this respect between a municipal corporation and a county. They are both political and geographical divisions of the State. They are both the subjects of its political dominion. The local governments derive their powers from the paramount political head, which, while it cedes to certain local agents certain powers, does not thereby remit its rightful and ultimate dominion; for it would be strange if the political power could appoint agents, and delegate powers of a political nature, and not itself be able to do or regulate what is done or regulated solely by virtue of its permission and authority.

It may be conceded that the Board of Supervisors had no power to make this subscription without the Act of the Legislature. It had no power, because it was not authorized by any law. But this law gave them the authority.

Having seen that there is nothing peculiar to our Constitution which denies effect to this Act, we are brought to consider the validity of the statute on more general principles. The question is not new. It has frequently arisen in other States, and the decisions, we believe, have been uniform. Few questions have been more thoroughly argued or more elaborately considered. In New York, Mississippi, Ohio, Tennessee, Pennsylvania, Virginia, Kentucky, North Carolina, and Indiana, the binding force of such a law has been affirmed.

The case of *The City of Aurora* v. *West*, (9 Ind. 74,) is so pertinent to the leading points involved here that it deserves particular notice. The Legislature, by Act, incorporating the town of Aurora, empowered the city to " take stock in any chartered company for making roads to said city," and that they might issue bonds, etc.; this they had power to do whenever a majority of the qualified voters of the city required it. The City Council subscribed fifty thousand dollars of the capital stock of the Ohio and Mississippi Railroad Company. The Constitution of Indiana forbade the State going in debt for internal improvements, and also forbade counties, but cities were not expressly forbidden. In that case, as in this, the spirit of the Constitution was invoked by counsel. We extract a portion of the opinion of

the Court, because it not only fully receives our approbation, but comprises, within a short compass, a full answer to the argument of the Appellants.   The Court say :

" The provisions in the new Constitution, then, on the question under consideration, amount to this : they admit the power of the State to construct works of internal improvement, but forbid her, in her State capacity, to create a debt for the purpose. They grant that the power may be conferred upon counties to take stock in companies chartered to construct such works, but require simultaneous payment.   They do not prohibit the conferring of the power to take stock upon cities, either by means of cash or credit, or of otherwise aiding these undertakings, but they prohibit the State from assuming any debts cities may contract.

The implication from these provisions, in regard to cities, if there be any, is in favor of their power to take stock, etc.   At all events, if they ever possessed the power, that power is left unimpaired.   The convention did not consider that an inhibition upon the State to construct internal improvements, in her capacity as such, by means of loans, prohibited her from authorizing other agencies to construct them by such means; hence, they proceeded to impose the restriction as to counties, but did not extend it to cities, though naming them in the same section. The maxim, therefore, that the expression of one excludes the other, must apply.

Suppose the Constitution said that the State should not, by means of her officers and funds, construct railroads, would the provision be construed to prohibit the State from chartering companies for that purpose?   It would rather imply that they were to be constructed by such agencies; for an intention to entirely arrest the improvement of the State could not be presumed.

If, then, cities, under the old Constitution, or it would seem under, perhaps, any Constitution, could be invested by the Legislature with the power of aiding works of internal improvement, they still can be invested with such power.

The question, therefore, presents itself, can such power be given to a city?   Of the policy of conferring it, we have said all that it becomes us to say, in *The City of Lafayette* v. *Cox,* (5 Ind.

R. 38,) to which we refer. Of the capacity to confer it, we have not heretofore expressed an opinion. That is now the question. We have seen that no express constitutional provision stands in the way of granting such power to a city, as we hold that the prohibition in the Constitution upon the Legislature to create a State debt does not prohibit that body from authorizing cities to create debts. This is our construction of the language of the Constitution. But it is insisted that the power is not a legitimate part of the authority of a municipal corporation—that it is outside of the purpose for which such corporations are created—and that this is a sufficient reason for holding them incompetent to receive a grant of such power. But is not this begging the very question to be decided? For what precise purposes are municipal corporations created? How much power, and no more nor no less, is embraced by the idea of a municipal corporation? We have not been satisfactorily enlightened on this point. If the Legislature can confer a little legislative power upon a city for local objects, can it not confer a greater amount for the same objects? It would hardly be said that cities were created simply to establish and enforce police regulations—to maintain order among the citizens. By common custom, they establish sanitary regulations, rules governing markets, etc. and on what principle do they exercise these powers? They go further. They construct streets, sidewalks, bridges, etc. within their limits. They do more. They build wharfs to accommodate their trade and commerce, coming to them from a distance; they construct water-works—going, for the purpose, miles beyond corporate limits. They construct works for lighting, etc. These, and other like powers, though not existing in every one, yet, we believe, all concede may be conferred upon municipal corporations as legitimate, as constitutional, though in their exercise, the citizens are not severally equally benefited in proportion to taxes paid. (See *Lafayette* v. *Cox*, 5 Ind. R. 38.) Now, if a city may build wharfs, or take stock in companies created to build them, to foster commerce—may take stock in companies chartered to furnish the people with water, light, etc.—why, as a question of power, may it not take stock in companies for the making of highways to facilitate the bringing in of bread, and meat, and fuel, to the citizens? Are not these of nearly as

much importance to them as water, light, etc.   And are not such works, in a special manner, locally advantageous to the city? And where the citizens of a place have seen fit to ask, and the Legislature to grant such power, and the citizens have subsequently, in the prescribed mode, exercised it, no constitutional provision forbidding, a Court, whose province is simply to decide what the law is, not what it should be, can annul such exercise of power.   How much local benefit must an improvement confer to bring it within the spirit of a local one?   If a city may build a wharf to accommodate its commerce, may it not, also, a depot? May it not build the track of a road through its corporate limits? May it not, then, put in that amount of stock, or bonds, to pay the company the sum the depot and track would cost?"

The Court then goes on to hold, with Chancellor Kent, (Com. 2 Vol. 277,) that public corporations are created by the Government for political purposes as counties, cities, etc.; they are invested with subordinate legislative powers, to be exercised for local purposes, connected with the public good, and such powers are subject to the control of the Legislature of the State.   It sums up the argument on this general subject by saying: "The Constitution of the State authorizes the Legislature to create corporations, and imposes no limit as to the powers to be conferred on them, no clause confining their action to objects entirely disconnected with anything outside the corporate limits."

In *Grant* v. *Courter*, (24 Barb. 233,) the subject is elaborately treated.   The question there, was as to the validity of a statute of New York, empowering the towns in the counties through which the Albany and Susquehanna Railroad is located and in progress of construction, to borrow money and subscribe for and purchase the stock of the company.   After giving the general course of reasoning adopted in the Indiana case, the Court say:   "The Act, consequently, is not repugnant to the provisions of the State Constitution above referred to, nor is it without the general grant of legislative power.   The precise question at issue, as to the power of the Legislature to authorize towns, cities, and counties, to subscribe for railroad, turnpike road, or bridge stocks, has been decided repeatedly in various States of the Union, and the final decision in each of them, has upheld the law as constitutional.   The Constitutions of several of these

States contain similar provisions for the protection of private property to those above alluded to. The only case in contradistinction to which we have been referred, is that of *Clarke* v. *The City of Rochester*, (13 How. Pr. 204,) decided at special term, and in which Judge Allen, in his able opinion, rests the decision in part upon other grounds, to which allusion will hereafter be made." (*Sharpless* v. *Mayor of Philadelphia*, 21 Penn. R. 147; *Commonwealth* v. *McWilliams*, 11 Id. 62; *The Cincinnati, etc. R. R. Co.* v. *Commissioner of Clinton County,* 21 Ohio 77; *Cass* v. *Dillon*, 22 Id. 607; *Talbot* v. *Dent*, 9 B. Mon. 526; *Slack* v. *The Maysville R. R. Co.* 13 Id. 1; *Nicoll* v. *Mayor of Nashville*, 9 Humphrey, 252; *Ryder* v. *Alton R. R. Co.* 13 Illinois, 516; *Shaw* v. *Dennis*, 5 Gilman, 405; *City of Bridgeport* v. *Housatonic R. R. Co.* 15 Conn. 475; *Goddin* v. *Crump*, 8 Leigh, 120; *Harrison Justices* v. *Holland*, 3 Grattan, 247; *Taylor* v. *Commissioners of Newbern*, 2 Jones, 141; see, also, *Thomas* v. *Leland*, 24 Wend. 65; *People* v. *Mayor of Brooklyn*, 4 Comst. 419; *White* v. *The Syracuse and Utica R. R. Co.* 14 Barb. 559.)

The Court consider the point made, that the fact that the Act was not to take effect except after a vote of two-thirds of the electors, was unconstitutional as a limitation upon legislative power, and hold that there is nothing in it—the legislative Act being complete when exercised, and the effect of the Act only controlled by the condition. The same thing is held in 21 Penn. 189; 21 Ohio, 77.

The case of *Benson* v. *Mayor of Albany* involved the same question, and was decided the same way. (24 Barb. 253.) The Constitution of New York contains a clause similar to our own in regard to municipal corporations, directing the Legislature to restrict the power of municipal corporations to tax, assess, borrow money, contract debts, etc. But this provision was considered as not interfering with their power to subscribe for stock, tax, etc.

Many more cases might be cited, but it is unnecessary. The decisions, with a single exception—and that case overruled—seem to be all one way.

With the policy of such laws, as the Courts of Indiana and New York remark, we have nothing to do. Our duty is to declare the law as we find it.

The result of all the cases is, that the Legislature has a right to authorize a local tax for the purpose of internal improvements; that it may authorize the local authorities to impose the tax; that this authority may be given upon petition or without it, or by or without a submission of the proposition to the people; and that it is not essential that the improvement should be within, or confined to, the locality taxed, and that a subscription for stock, to be paid for by taxation, is a valid contract to pay it.

This leaves but one question open; and we think there is nothing in it requiring extended notice. It has been seen that the Act allows the subscription to be made to the capital stock of any company " for the purpose of constructing any railroad, by which a railroad connection shall be formed between the city of Marysville and the city of Benicia, or any point on the Sacramento River." The Committee appointed must decide whether this road is a proper one to effect their object. We do not question that it answers the end intended, and that a subscription to it would give effect to the intent of the Act of the Legislature. The error of the Appellant's argument is, in supposing that the subscription is to be to. a railroad company formed for the express and only purpose of connecting Marysville and one of these termini; whereas the truth is, the subscription is to any railroad by which a railway connection shall be formed between Marysville and one of these points. The company receiving the subscription need not be constituted for this express and only purpose; but the effect of their work must be to make this connection. The road of this company commences at a point in the city of Marysville, and continues on from thence, through the county of Sutter, to a point on the Sacramento River at Knight's Ferry, forming a railroad connection between the city of Marysville and the Sacramento River, at Knight's Ferry, thence to Vallejo, thence by steamboats to San Francisco. That the railroad is continued further, or that the work goes beyond this in any other respect, is no objection, as it completely answers the description in the Act, so far as the description goes, and the statute designed.

Judgment affirmed.