THE CHICAGO, BURLINGTON, AND QUINCY RAILROAD COMPANY *v.* THE COUNTY OF OTOE.

## The Chicago, Burlington, and Quincy Railroad Company v. The County of Otoe.

This was an action brought in the United-States Circuit Court for the District of Nebraska upon certain coupons detached from bonds issued by the defendant to the Burlington and Missouri-River Railroad Company, by which they were transferred to the plaintiffs. On the trial the judges differed in opinion, and certified the points to the Supreme Court, where it was argued by *J. M. Woolworth* for the plaintiffs, and *Gilbert B. Scofield* for the defendants.

Mr. Justice STRONG delivered the opinion of the Court.

The first question upon which the judges of the Circuit Court divided was, whether the act of the legislature of Nebraska, approved Feb. 15, 1869, authorizing the county of Otoe to issue bonds in aid of a railroad outside of the State, conflicts with the constitution of that State. The record contains an agreed statement of facts, exhibiting, *inter alia*, the act, the constitutionality of which is in controversy. Its preamble recited that the qualified electors of Otoe County had, at an election held for the purpose, authorized the commissioners of the county to issue its bonds to any railroad in Fremont County, Iowa, that would secure to Nebraska City an eastern railroad connection, to the amount of two hundred thousand dollars; and its first section, therefore, enacted that the said commissioners should be authorized to issue one hundred and fifty thousand dollars of the bonds aforesaid to the Burlington and Missouri-River Railroad Company, or any other railroad company that would secure to Nebraska City a direct eastern railroad connection, as a donation to said railroad company, on such terms and conditions as might be imposed by said county commissioners.

The second section enacted that said bonds, when so issued,

### THE CHICAGO, BURLINGTON, AND QUINCY RAILROAD COM-
### PANY *v.* THE COUNTY OF OTOE.

should be binding obligations on said county, and be governed by the terms and conditions of an act entitled "An Act to enable counties, cities, and precincts to borrow money or to issue bonds to aid in the construction or completion of works of internal improvements in the State, and to legalize bonds already issued for such purpose," approved February, A.D. 1869. Under this act, the bonds, for the interest upon which this suit was brought, were issued by the commissioners of the county to the Burlington and Missouri-River Railroad Company; and by that company they were negotiated to the plaintiffs.

Unless we close our eyes to what has again and again been decided by this Court, and by the highest courts of most of the States, it would be difficult to discover any sufficient reason for holding that this act was transgressive of the power vested by the Constitution of the State in the legislature. That the legislative power of the State has been conferred generally upon the legislature is not denied; and that all such power may be exercised by that body, except so far as it is expressly withheld, is a proposition which admits of no doubt. It is true, that, in construing the Federal Constitution, Congress must be held to have only those powers which are granted expressly or by necessary implication; but the opposite rule is the one to be applied to the construction of a State constitution. The legislature of a State may exercise all powers which are properly legislative, unless they are forbidden by the State or National Constitution. This is a principle that has never been called in question. If, then, the act we are considering was legislative in its character, it is incumbent upon those who deny its validity to show some prohibition in the constitution of the State against such legislation. And that it was an exercise of legislative power is not difficult to maintain. No one questions that the establishment and main-tenance of highways, and the opening facilities for access to markets, are within the province of every State legislature, upon which has been conferred general legislative power.

## The Chicago, Burlington, and Quincy Railroad Company *v.* The County of Otoe.

These things are necessarily done by law. The State may establish highways or avenues to markets by its own direct action; or it may empower or direct one of its municipal divisions to establish them, or to assist in their construction. Indeed, it has been by such action that most of the highways of the country have come into existence. They owe their being, either to some general enactment of a State legislature, or to some law that authorized a municipal division of the State to construct and maintain them at its own expense. They are the creatures of law, whether they are common county or township roads, or turnpikes, or canals, or railways. And that authority given to a municipal corporation to aid in the construction of a turnpike, canal, or railroad, is a legitimate exercise of legislative power, unless the power be expressly denied, is not only plain in reason, but it is established by a number and weight. of authorities beyond what can be adduced in support of almost any other legal proposition. The highest courts of the States have affirmed it in nearly a hundred decisions; and this Court has asserted the same doctrine nearly a score of times. It is no longer open to debate.

Then what is there in the constitution of the State of Nebraska which denies this power to the legislature? There is no direct or express prohibition. General legislative power is vested in the legislature. None was reserved to the people of the State. There are, however, certain restrictions that may be noticed. The constitution declares that "the property of no person shall be taken for public use without just compensation;" and it is earnestly contended that this prohibits the legislature from passing any laws in aid of the construction of a railroad that may result in the imposition of taxes. It is said that the Act of Feb. 15, 1869, is taking private property for a public use without compensation. It would be a sufficient answer to this to say that a similar provision is found in the constitution of almost every State, the legislature of which has been held authorized to legalize municipal subscriptions

## The Chicago, Burlington, and Quincy Railroad Company *v.* The County of Otoe.

in aid of railroad companies. It has never been held to prohibit such legislation as we are now considering. But the clause prohibiting taking private property for public use without just compensation has no reference to taxation : if it has, then all taxation is forbidden ; for "just compensation" means pecuniary recompense to the person whose property is taken equivalent in value to the property. If a county is authorized to build a court-house or a jail, and to impose taxes to defray the cost, private property is as truly taken for public use without compensation as it is when the county is authorized to build a railroad or a turnpike, or to aid in the construction, and to levy taxes for the expenditure. But it is taken in neither case in the constitutional sense. The restriction is upon the right of eminent domain, not upon the right of taxation.

We find nothing else in the constitution of the State that can, with any reason, be claimed to restrain the power of the legislature to authorize municipal aid to railroads or other highways. There is a clause that declares "the credit of the State shall never be given to, or bound in aid of, any individual association or corporation ; " and another that ordains that the debts of the State shall never, in the aggregate, exceed fifty thousand dollars : but these refer only to State action and State liability. *Patterson* v. *Board of Supervisors of Yuba,* 13 *Cal.,* 175.

In view, therefore, of the organic law of the State, and of the decisions which have been made in regard to other similar constitutional provisions both in the highest courts of the States and in this court, we think it cannot be doubted that the legislature of Nebraska had authority to authorize its municipal divisions to incur indebtedness and to impose taxation in aid of railroad companies.

It is urged, however, against the validity of the act now under consideration, that it authorized a donation of the county bonds to the railroad company ; and it is insisted, that, if even the legislature could empower the county to subscribe to

## THE CHICAGO, BURLINGTON, AND QUINCY RAILROAD COMPANY *v.* THE COUNTY OF OTOE.

the stock of such a corporation, it could not constitutionally authorize a donation. Yet there is no solid ground of distinction between a subscription to stock and an appropriation of money or credit. Both are for the purpose of aiding in the construction of the road; both are aimed at the same object, securing a public advantage, obtaining a highway or an avenue to the markets of the country; both may be equally burdensome to the tax-payers of the county. The stock subscribed for may be worthless, and known to be so. That the legislature of the State might have granted aid directly to any railroad company by actual donation of money from its treasury, will not be controverted. No one questions, that, in the absence of some constitutional inhibition, the power of a State to appropriate its money, however raised, is limited only by the sense of justice and by the sound discretion of its legislature. If the power to tax be unrestricted, the power to appropriate the taxes is necessarily equally so. Accordingly, nothing has been more common in the State and Federal governments than appropriations of public money raised by taxation to objects in regard to which no legal liability has existed. State legislatures have made donations for numerous purposes wherever, in their judgment, the public well-being required them; and the right to make such gifts has never been seriously questioned. As has been said, the security against abuse of power by a legislature in this direction is found in the wisdom and sense of propriety of its members, and in their responsibility to their constituents. But if a State can directly levy taxes to make donations to improvement companies, or to other objects, which, in the judgment of its legislature, it may be well to aid, it will be found difficult to maintain that it may not confer upon its municipal divisions power to do the same thing. Counties, cities, and towns exist only for the convenient administration of the government. Such organizations are instruments of the State, created to carry out its will. When they are authorized or directed to levy a tax, or to appropriate its proceeds, the State, through them, is doing indirectly what it might do

THE CHICAGO, BURLINGTON, AND QUINCY RAILROAD COMPANY *v.* THE COUNTY OF OTOE.

directly. It is true, the burden of the duty may thus rest upon only a single political division; but the legislature has undoubted power to apportion a public burden among all the taxpayers of the State, or among those of a particular section. In its judgment, those of a single section may reap the principal benefit from a proposed expenditure, as from the construction of a road, a bridge, an almshouse, or a hospital. It is not unjust, therefore, that they should alone bear the burden. This subject has been so often discussed, and the principles we have asserted have been so thoroughly vindicated, that it seems to be needless to say more, or even to refer at large to the decisions. A few only are cited. *Blanding* v. *Burr*, 13 *Cal.*, 343; *The Town of Guilford* v. *The Supervisors of Chenango County*, 3 *Kernan*, 149; *Stuart* v. *Supervisors*, 30 *Iowa*, 9; *Augusta Bank* v. *Augusta*, 49 *Maine*, 507; *Railroad Co.* v. *Smith, Ill.*, — a case decided by this court, and not reported.

One other objection to the constitutionality of the act is urged: it is, that it authorized aid to a railroad beyond the limits of the county, and outside the State. There is nothing in this objection. It was for the legislature to determine whether the object to be aided was one in which the people of the State had an interest; and it is very obvious that the interests of the people of Otoe County may have been more involved in the construction of a road giving them a connection with an Eastern market than they could be in the construction of any road wholly within the county. But that the objection has no weight may be seen in *Gelpcke* v. *Dubuque*, 1 *Wallace*, 175; *Walker* v. *Cincinnati*, 21 *Ohio*, 14.

We conclude, therefore, that the act of the legislature of Feb. 15, 1869, is not in conflict with the constitution of the State.

The second question upon which the Circuit Court divided was, "whether the county commissioners of Otoe County could, under the Act of Feb. 15, 1869, lawfully issue the bonds from which the coupons in suit were detached, without the proposition to vote the bonds for the purpose indicated, and also a tax

to pay the same being or having been submitted to a vote of the people of the county, as provided by the act of the Territorial legislature of Nebraska, passed Jan. 1, 1861." This question we answer in the affirmative. If the legislature had power to authorize the county officers to extend aid on behalf of the county or State to a railroad company, as we have seen it had, very plainly it could prescribe the mode in which such aid might be extended, as well as the terms and conditions of the extension; and it needed no assistance from a popular vote of the municipality. Such a vote could not have enlarged legislative power. But the Act of 1869 was an unconditional bestowal of authority upon the county commissioners to issue the bonds to the railroad company. It required no precedent action of the voters of the county. It assumed that their assent had been obtained. That, prior to 1869, the sanction of approval by a local popular vote had been required for municipal aid to railroad companies or improvement companies, is quite immaterial. The requisition was but the act of an annual legislature, which any subsequent legislature could abrogate or annul.

It must therefore be certified to the Circuit Court, *first,* that the Act of Feb. 15, 1869, is not unconstitutional; and, *second,* that the county commissioners of Otoe County could lawfully issue the bonds from which the coupons in suit were detached, without any submission to a vote of the people of the county of the proposition to approve the bonds, or a tax for the payment thereof.

Let it be certified accordingly.

MILLER, Justice. — I am requested to state that the Chief Justice, Mr. Justice DAVIS, and myself, dissent from the opinion in this case.